Colcock, J.
As to the first ground, stated in the suggestion, it does not appear to me that it can be said that the City Council have delegated their power ; for, it will be observed, that the assess. *219 ments, although made by the commissioners in the first instance, are to be submitted to the consideration of the Council, and are not to be acted upon, until approved by them ; so that I should consider the commissioners only as officers, or agents, appointed to ascertain data, on which the assessment is to be founded ; and this power of appointing officers, or agents, to assist in the discharge of the multifarious duties which devolve on the City Council, is not only incident to corporations, but is expressly given to them by the 4th section of the act of incorporation. P. L. p. 329.
As to the second ground, from the wording of the act of 1764, I am of opinion that the City Council may legally assess the owners of a lot, which bounds on two streets, for two pave-merits, but whether the sum levied in this case is agreeable to law, and the value of the house, I cannot decide, unless the assessment of the whole town, or square, was laid before me.
What is stated as a third ground in the suggestion, might be urged against the existence of such, a law, but cannot weigh with me, whose duty it is to state what the law is, not what it should be.
The fourth ground is, in my judgment, the pivot on which the case turns. The City Council claim the right to make the assess, ment, under that part of the act of incorporation, P. L. 329, which vested in them the powers of the commissioners of streets, as given by the act of 1764, P. L. 49 ; and I have no doubt but they have departed from the spirit, as well as the letter of that act. It certainly must be considered as an exercise of arbitrary power, and-wholly inconsistent with the principles of our government, that a tax should be exacted from any person without giving any notice of the reasons for laying it, or the principles on which it is levied. The act, from which the power is derived, expressly guards against this, by requiring that the assessment should be made known, by being hung up in some public part of the town, (a mode of publication, which was, perhaps, at that time, a proper one,) for ten days. Now, the ordinance of the City Council only requires that the assessment which is made, is to be given to the officer, who is to give the party twenty days notice that he is assessed in such a sum ; and no means afforded him, as was unquestionably intended by . the act of 1764, to ascertain the justice of the assessment, or to oppose its injustice, if any there should be. - This might be done, by passing an ordinance stating the principle on which the assessment is made, the value of each house, and the sum in which each individual is assessed, which should go into operation at some fu* *220 ture period ; allowing such time as would enable those to be af, fected by it,, to make such opposition as they might deem proper.
Assessments never should be resorted to, if they can be avoided ; for, with all the guards which can be placed upon them by the law, there will, at least, in some degree, be the exercise of an arbitrary power. It is, therefore, the duty of this court to see that the assessments made by the City Council, are in strict conformity with those guards, which have been placed upon the exercise of this power. It appears to me that they have not given that public notice of the assessment, which was intended by the act of 1764, and which justice requires.
As to the 5th and 6th grounds, the powers of the City Council, and those of the City Court, are very distinct. There is no limit to the power of the former in assessment; and the latter has nothing to do with the case: for the law directs the assessments to be recovered by warrant. I am, therefore, of opinion that the mo. ' tion be rejected.
Nott, J.
This is an application to this court, to reverse a decision of the Circuit Court, ordering a prohibition against the City Council.
The first and most important ground on which the prohibition has been granted,, is, that the City Council have, by an ordinance passed in the year 1806, delegated to' the commissioners of the streets, powers which they ought to have exercised themselves. There is no principle more clear, than that all inferior corporations must keep within the pale of their charters ; and if they exceed the powers therein granted, they may be restrained by the controlling power of this court. It is equally clear, that a delegation to another body, of powers which they are required to perform themselves, is transcending the limits of their charter. The act of incorporation transfers to the City Council all the powers given to the commissioners of the streets by the act of 1764. The powers of the commissioners of the streets, therefore, ceased with that act. And although the City Council still employ persons as commissioners of the streets, eo nomine, yet they are not to be, considered in the character of the former board, but as sub-commissioners, clothed with no authority except what they derive from the City Council, Whether the City Council have delegated to them powers which they ought to have retained themselves, is a question which must be decided by a comparison of the act with the ordinance.
By the 2d clause of the act of 1764, P. L. 49, it is enacted, that the commissioners of the streets should have power and autho. *221 city, among other things, to sink or lay common drains', or sewers, and wells,- to cause footways to be levelled and paved, dsc. By the 3d clause, it is enacted, that this expense shall be borne by the proprietors of houses, &c., who shall be benefitted thereby, rateably and proportionably to their value. And in order to ascertain the proportion that each shall pay, the latter part of the same clause authorises the commissioners to make an assessment on the owners, &c.' All these duties are now required to be performed by the City Council, that is to say, they have the. power, 1. To make pavements, &c. 2. To make the owners of the adjacent lands pay the expense ; and 3. To assess the amount that each shall pay.
The ordinance authorizes the commissioners of the streets, that is, the sub-commissioners, 1. To point, out and designate such drains and pavements, &c., as they shall think necessary. There is nothing objectionable in this part, as it only authorizes them to point out and designate, &c., for the information of the Council, and not to make. 2. It requires the ‘owners of lots to pay the expense; this is also conformable to the act. 3. It requires the owners to pay what the commissioners shall assess. Now, although ibis is not saying in totidem verlis, -that the commissioners shall make the assessment, yet it is necessarily implied ; for the owners .cannot pay what the commissioners do assess, Unless they have the power, and do make assessments. This, then, is delegating to the commissioners the power to make assessments, which, by the act, is expressly given to themselves.
Nor do I think that the measure is aided by the subsequent clause, retaining to themselves the right of approving such assess, ment. The constitution of the United States authorizes Congress to pass laws for the regulation of commerce ; but, I presume, a law authorizing the secretary of the treasury to regulate commerce, would not be thought constitutional, even though it reserved to Congress the right of approving, or rejecting, such measures as he should adopt. Making an assessment is.one thing ; approving'of it afterwards is another: and, so far asan exercise of the judgment is necessary, may require very different operations of the mind. It is not for us to inquire, what has been the practical effect of this measure ; it is sufficient that we see what may be the possible abuse of it. An act, enlarging the powers nf an inferior corporation, ought, to be construed stric.tly. This is a tremendous power to be granted, even to the City Council itself, and in the exercise of which, they ought to be confine..' to the very letter of th.eir charter.
But, 2d. The act of 1764, required the commissioners to give tea *222 (]ayS not¡ce 0f the assessment, before they proceeded to issue their warrant of distress. The act does not expressly say, that this no-bee is intended for the purpose of giving the party an opportunity of shewing cause against it; but it must be so understood, as it could answer no other. But this ordinance contains no such provision, nor does it appear that the requisition of the act has been complied with.
It is stated on the part of the City Council, that the party had notice, but this court cannot now listen to suggestions of that sort. If they thought it material, they should have required a declaration .to be filed, and have had the fact tried. But now the case must be decided from the face of the proceedings. On both grounds, I am of opinion that the prohibition was properly ordered, and that this motion ought to be discharged.
Brevakd, J.
By the act “ to incorporate Charleston,” passed in tfie year 1783, P. L. 327, sec. 4, the City Council of Charleston are empowered to make by-laws, respecting the streets, lanes, &c., and to establish such regulations as shall appear necessary for the security, welfare, and convenience of the city : and all the powers and authorities, which-, at that time, were vested in the commissioners of the streets, and commissioners of the markets, were transferred to the City Council; who are also empowered by the said act to make such assessments on the inhabitants of the city, or those who hold taxable property within the same, as shall to them appear expedient, for the safety, convenience, and advantage of the city ; and to affix, and levy fines, for all offences committed against their by-laws, sfec.
In this act of incorporation, the legislature intended, it appears to me, to vest in the City Council all the powers and authorities which were vested in the commissioners of the streets and markets, subject to the same restraints and qualifications which adhered to those powers and authorities, while iti the hands of those commissioners. Therefore, although the City Council aré compe. tent to make by-laws, respecting the streets, lanes, and markets, of the city, and to make assessments on the inhabitants of the city, or those who hold property within the same, and to affix and levy fines for offences committed against their by-laws : yet, in the exercise of these powers, the Council is, I apprehend, limited and restrained in the same manner, and by the same legislative'instrument, by which those powers were originally granted to the commissioners of the streets and markets. The act of assembly of the year 1764, gives to certain commissioners, or a majority of them, power to *223 level and pave footways, sink drains, &c., the charge and expense of which is to be borne and paid by those interested therein, owners of tiie land, &c., benefitted by such improvements, in proportion to the value of the property so benefitted. And in order to provide the means necessary for defraying such expenses, the commissioners, or a majority of them, are authorized to make assessments on all owners and proprietors, &c. The act, however, provides that after the assessments are made, ten days notice thereof shall be given by copies affixed, &c., in order that those who may conceive themselves aggrieved, may have an opportunity of being heard, and of shewing cause against the same, and of being relieved. The commissioners were authorized by the act of 1764, to grant relief upon sufficient cause shewn, and were required to allow ten days notice, or indulgence, to the party assessed, to shew causp against, or comply with, the assessment, before issuing a warrant of distress to levy the amount. . The city ordinance, in question, in the present case, authorizes the commissioners of the streets and lamps to designate such new drains and foot pavements as they may deem necessary and expedient ; and, with the consent of the City Council, contract for building and making thereof} also .to assess the owners of lots, &c., to defray the expenses of such buildings, &c. And such assessments are directed to be made out under the direction of the commissioners, who are to approve thereof. The same is, however, to be approved of by the City Council. The ordinance requires twenty days notice to be given to those assessed ; but to what end, or purpose, does not appear, no mode being prescribed by which advantage may be derived from this notice. 1 am of opinion, that any proprietor assessed, either according to the act of 1764, or the act of incorporation, is entitled to at least ten days notice of such assessment, and an opportunity of being heard, and of shewing cause against the same.
But the ordinance appears to afford no such opportunity of being heard, or any means of relief; so far, it is, in my opinion, illegal. I also incline to think, that tire ordinance vests an illegal power in the commissioners of the streets and lamps, “ to make assessments according to their discretion, to be approved by them.” The ultimate right of approval is, indeed, reserved to the City Council: but, I think, the assessments ought to be made under the immediate direction of the City Council. At any rate, the right to appeal to them, from the discretionary proper of the commissioners, ought to have been proved.
Again; I incline to think, that the assessment in the present case *224 was illegal, being for a sum exceeding one hundred dollars. TiiS extent of the jurisdiction of the City Court being one hundred dollars, the city legislature cannot, by their by-laws, impose fines, pe* r,aities, or taxes, beyond that amount; otherwise, this local legislature would impose duties on other officers than their own ; and other courts than the City Court must be employed to enforce the observance of their local statutes. This, I think* was not intended by the act of incorporation. The jurisdiction of the City Court being limited to one hundred dollars, necessarily, in my judgment,limits the power of the City Council in the enactment of bylaws. In fine, my opinion, in this case is, that the motion ought to be rejected.
Grimkb, J.
The motion in this case was to set aside a prohibition obtained by- the defendant against the City Council. The facts were, that it being necessary to make a pavement before the' door of defendant, and others, in Meeting-street* the plaintiffs directed the commissioners of the streets to make a contract for the same, and assess the value thereof, and lay such assessment before' them. The commissioners accordingly did so, and on the face of the assessment was a resolve of the City Council agreeing to the' same. The copy of the assessment was then given to the city collector, who, after having waited twenty days, agreeably to part of the city ordinance, issued an execution against the defendant,, who had not paid tho sum assessed to him.
With respect to the first ground in the brief, I am of opinion that the City Council have not exceeded .their powers in appointing commissioners of the streets to execute that part of the duty which, in this case, they have allotted to them.
With respect to the 2d and 3d grounds, my opinion is, that it has-been the constant and uniform practice of the old commissioners of the streets, and of those acting under the City Council, to assess those persons before whose houses th^ pavements are made; and that a contrary mode of proceeding would tend to make those who have long ago paid for their own pavements, pay a double tax, if they were now to be assessed for the pavements of the city generally ; and that those who have never yet paid any assessment for' pavements, if they were now required to do so, by a tax on the whole city, would be much better off than those who have been compelled to pay heretofore. A tax should operate in a general1 way, on all the citizens at large, and not partially; and such a new mode of taxation, if now adopted, would certainly have a very par*' tial effect.
Note. In the ease of Hueston v. The City Council, 1 M’Cord, 345, it was decided that the act of 1764, P. L. 49, is repealed by A. A. 1785, P. L. 398. The authority of this case, therefore, as far as the questions decided appear to turn on the construction of the act of 1764, seems to be overruled.
With respect to the jurisdiction of the City Court extending to bnly $100, it does not apply in this case, for it is no verdicCof that court; and on the 6th ground, “that the City Council cannot impose a fine or penalty beyond $100,” this is not a case in point; for the assessment is neither fine nor penalty. I am, however, of opinion, on the 4th ground, that the prohibition should go ; because, in the act of assembly of 17f>4, giving-powers to the commissioners oí the streets to perform this duty, they are enjoined, after the assessment is made, to hang up the assessment in some public place in the city, so that each citizen concerned, may have notice of the sum he is so assessed. By the act of incorporation, the City Council had all the powers of these commissiohers; and, therefore, iri framing their ordinance on this subject, they should have taken care to insert a clause, by which notice should be brought home to the party assessed. It does appear, on examining the ordinance, that twenty days notice is required ; but it is not declared for what purpose, or to whom this notice is to be given, It is not pretended on the part of the City Council, that any such notice was given to the party complaining, but that, after they had approved the assessment, they sent it to their treasurer, who kept it twenty days, and then issued his warrant of execution. Surely, this cannot be called notice, of which the complainant might avail himself, by representing to the City Council some error, or illegality in their proceedings, as was done in the case of Mr. Rouse, who convinced the City Council that they had acted erroneously in their assessing him, and who was Consequently relieved by them from the payment thereof. My opinion is, therefore, that the prohibition should go ; and of the same opinion are all my brethren.